Good morning and welcome to the Ninth Circuit. We have several cases that are submitted on the briefs, Revitch v. Direct TV, Bailey v. United States, and we'll proceed with Regional Medical Center v. WH Administrators. You may proceed. Good morning, and may it please the Court. My name is Ann Voights, and I represent the appellant Regional Medical Center of San Jose. I'd like to reserve five minutes of my time for rebuttal, if I may. You may. Watch the clock. I'll also try to help you. Thank you, Your Honor. In dismissing this case without leave to amend, the District Court committed two reversible errors. First, it held that the right to sue for benefits can be severed from the right to receive benefits. But that essentially eviscerates the right. It divides in two something that is fundamentally indivisible. Second, it held, contrary to this Court's controlling case law, that the proximity rule applies only to plan beneficiaries, not to service providers who have been assigned their rights. That, too, was error. This Court should reverse the District Court's order dismissing RMC's claims without leave to amend, and it should remand for further proceedings. With respect to the first issue, it's undisputed that a plan beneficiary can, as a general matter, assign benefits. And the consensus view of every circuit court to consider the issue is that an assignment of the right to receive benefits logically entails the right to sue for nonpayment. Absent that, it's essentially a meaningless right. And here, there's no dispute, really, that the patient in this case assigned her benefits to the hospital, that the hospital had every right to pursue payment, and when payment wasn't adequate, to then contest the adverse benefits determinations. Counsel, would you help us with the applicability of DB Health Care and Spindex with respect to your argument? Certainly. First, with respect to DB Health Care, if I might. So DB Health Care holds, I think, what is essentially undisputed, the idea that you can have a nonassignment clause. So if there is a valid, unambiguous, properly noticed nonassignment clause, then a plan beneficiary cannot assign their benefits. Isn't that what we have here? No, Your Honor, it's not, for two reasons. First, the fact is that in DB Health Care, it didn't involve a case where, as here, there's both a grant of the ability to assign benefits. If you look in the plan itself, it does give the right, on page 21, to assign benefits. It says, specifically, all network benefits payable by the plan are automatically assigned to the provider of services, and then all other benefits payable by the plan may be assigned at your option, not the plan's option, not the plan administrator's option, but at the plan participant, at the patient's option. That's what happened here. Let me throw out a possibility and get your reaction. As you point out, the plan provides for this automatic assignment to the medical provider. And then I think what the bugaboo in the case is, is this claims review procedure which precludes the assignment of the right to sue. Do you think it's possible to read those congruously if you were to construe the prohibition against right to sue as prohibiting just a bare assignment of a right to sue, for example, to one of these consortium who buys up lawsuits or to a relative, for example? And might that be one way of reconciling the ability to assign the benefits with the right to sue and make it congruent with the no right to assign suit? Yes, Your Honor, I think that is certainly a possible reading. I think what is not a possible reading is what defendants suggest here, which is that you can have an assignment of benefits and yet no ability to actually enforce it. So what do you think they meant by this claims review procedure that precludes a right to assign the ability to sue? I think it's conceivable that it could mean no ability to sue beyond the rights that are assigned. But that is sort of standard law, that the assignee only has the rights that the assigner has. They step into the shoes of the assigner. But I think to read it as saying that you can assign the benefits and yet end up in a position where neither the patient nor the hospital can challenge an adverse benefits determination, I think is inconsistent with the underlying policies of ERISA that this Court needs to consider. One of the defendants has said that the patient can still sue, and I think the other hasn't weighed in on that. Was there ever in the district court any absolute concession by the defendants that notwithstanding the automatic assignment, the patient could still come in and sue? I think they have tried to. Some of them have argued that the patient could still contend. For example, W.H. administrators tried to make the argument that, well, essentially what they could assign was what was paid to the hospital. And so anything beyond that, any dispute beyond that could not be assigned. I don't think that's a reading that makes sense. Where is that? Where is that argument? Where is that language? The language about, I'm sorry. The language you're discussing in response to Judge Bennett's question. So the language in their briefs appears in, give me one second, I can. No, I was hoping you'd point to language in the documents themselves. I don't understand why, as a matter of contract, the plan couldn't insert a provision which would prohibit assignment of the right to sue, simply as a matter of contract. Why cannot that be done? I suppose that's where we are right now. It can't be done for two reasons. There's a general reason, and then there's one that's specific to this plan. So the general reason is that essentially they're dividing what can't be divided. So the right to assign benefits and then the right to enforce them. The reason that's specific to this case is the proximity rule, which is that you can't have, as they did here, over 50 pages separating the language that talks about being able to assign benefits. Well, the proximity rule applies to the patient, does it not? It wouldn't apply to the assignee, I wouldn't think. No, Your Honor. Your Honor, the language about the proximity rule, it talks about a reasonable participant as how we interpret whether the proximity rule has been violated. It's an objective test. But it doesn't ‑‑ none of the language of that rule ties it only to cases in which the patient is the one who's asserting that right. In fact, to do otherwise would end up in conflicting readings of the same plan, depending on which entity was actually bringing the claims, the patient or a provider. Again, can't that be done as a matter of contract? I think not, because ultimately the plan that we're talking about is a contract between the plan participant and the plan. And so the concern here is that if you were to change that, if you were to reduce the protections for a patient, the person who's the party to the plan, based on the fact that they assign their benefits to someone else, that's inconsistent with the ultimate purpose. But isn't that already established when the employee, then the patient first becomes a participant in the plan? Isn't that established from the very beginning of their relationship? Well, it's established, but I think when you look at the language of the plan, the question is can the plan participant, an ordinary reasonable participant, understand the scope of their rights? And I think looking here, where you have a very important right, whether you can assign your benefit to someone else who is, as this court has recognized and as other courts have recognized, better positioned often to pursue those claims on behalf of the patient. Counsel, we could avoid, if we wanted to, the proximity question at all by reading language. All network benefits payable by the plan are automatically assigned to include within that exact language the right to sue. Yes, you could. And the plan administrators could have tried to have written that language saying all network benefits that we decide are payable are automatically assigned, but if somebody wants to, but not the right to sue. But they didn't write it like that. They didn't write that either with respect to the network benefits or to the ability of the patient to assign for non-network benefits, as is the case here. That was at the patient's option. But that, I think, ties into Judge McEwen's earlier question about whether there is a way to read the two congruously, and I think that there is, but you simply can't do it in a way that then means that the assignment of benefits is fundamentally meaningless. And I think the defendants have no real answer to the fact that once the patient has assigned their rights to their provider, they no longer have a right to sue. They have no ability to pursue that. And so you end up in a case where the errors on the part of the plan have no remedy. Neither the patient nor the provider can pursue it. I see I'm close to my time, so if the Court has no further questions, I reserve the balance of my time for rebuttal. You may. Thank you, Your Honor. Good morning, and may it please the Court. My name is Horace Green. I represent Benefit Administrative Systems. I will cede 5 minutes of my time to Mr. Woody to address the proximity rule. All right. Will the Court please put 10 minutes on the clock? Because what we usually find is the first person kind of edges into the second person's time, and then they get anxious. So to avoid that, I'm going to give you 10 minutes. Thank you, Your Honor. You're welcome. We contend that this case turns on the language of the plan document and the language of the assignment between the patient and the hospital. The appellant in this case is not an entity that has the right to bring its own action under ERISA. Therefore, it cannot bring claims for benefits on its own behalf. It can only do so if the plan allows participants to assign their right to sue and if there is an assignment from the participant to the hospital, which expressly grants the hospital the right to bring sue. The written ERISA plan in this case allows participants the option to assign payment for covered claims to a provider instead of to the participant directly. The term assignment of benefits means in this plan that the plan participant files a claim and authorizes the plan to pay the provider directly. The plan does not allow the participant the ability to assign the right to seek benefits because it requires that the participant be the one to file the claim. The participant has the option, because we're talking in this particular case about an out-of-network hospital, the participant has the option to direct payment of benefits, but does not have the option of assigning the right to submit a claim or any of the participant's other rights under ERISA. Moreover, the plan specifically states that participants do not have the right to assign the right to sue to recover benefits, to enforce rights due under the plan, or to assign any other cause of action that the participant may have against the plan. Sotomayor, I think you're going to have to respond directly to the argument that Ms. Voigt makes that you can't separate the two. In other words, you can't divide the right to sue from the right to assign. Well, actually, Your Honor, you can. Tell us how. Sure, sure. The right to the participant is an ERISA entity. That means the participant has the right under ERISA to bring a claim for benefits and to bring suit. The participant retains the right to bring a claim. The participant retains the right to bring suit. The limited opportunity, if you will, that the participant has the option to assign is the right of the provider to receive the benefit as opposed to have it being paid. I would particularly call the Court's attention to the Spindex case in which the discount tire plan contained a non-assignment provision, but also stated that the claim administrator had the option of paying the provider directly. And, in fact, in that case, the provider or, excuse me, the administrator did make payments to the provider correctly. The Court specifically noted in that case that the claim administrator had discretionary authority only to send payments directly to non-network providers. The administrator did not have the authority to consent to the assignment of benefits. And we would say the same thing is true in this case, except that it's the participant that we're talking about rather than the claim administrator. So in Spindex, notwithstanding... And that makes a big difference under ERISA when you're a participant in the plan, doesn't it? Well, what we're talking about here are the rights of ERISA entities and the right to bring suit. A participant at all times has the right to bring a claim for benefits and to bring suit to enforce their rights under ERISA, including the right to sue in the case that they disagree with the benefits determination. Nothing in this plan and nothing in ERISA and nothing in the case law has ever said that a participant loses the right to file suit in the face of a non-assignment clause. What that means in this case is it's clear that at all times, not without regard to where the payment is directed, at all times the right to bring suit remained with the plan participant. And the Court... So the patient can sue for the money that you didn't pay the hospital? That is correct. That is always the case. Yes. But the reality is if it's a $1,000 bill and the out-of-network fee is $100, then in your view it would be incumbent upon the plan participant, the recipient of the benefits, to sue to the plan to say, well, that's a miscalculation of how I read the out-of-network benefits. So it always falls to the patient in your view? Well... Yes or no? Yes. With the added proviso that the plan does allow the medical provider to act as the authorized representative of the participant. The participant retains the right, but the plan has addressed the idea that perhaps the provider would be in a better position to argue the case and to make the claim and to demonstrate why the claims process was incorrect or flawed or wrong in some manner. The provider can do that. I'm sorry. Is it just a question of who's named in the pleadings? But you're describing it now? Well, who retains the right? Who is the real party in interest? Who has the right to bring suit? Yes. And the language, again, in your view, all other benefits payable by the plan may be assigned at your option, does not, inherent in that language, is not the right to sue? That is correct. Not in the face of an express non-assignability of the right to sue clause. Well, I mean, but if it's — if this language includes the right to sue for benefits payable, then the language that says that you don't have the right to sue doesn't affect that language if benefits payable necessarily means the right not just to receive them, but to enforce that right. Well, we have authority that says that an unambiguous non-assignability clause is valid and will be upheld, and that's what we have here. So what we can't do, what we believe — Is that Spindex primarily? Yes. Yes. What we believe that the appellant is asking the Court to do is to read out of the express non-assignability provision while asking the Court to simultaneously read into and enforce other plan provisions, such as the provision which gives the participant the option to direct payment to the provider of services. We believe that under — that what Congress has intended is that ERISA plans be interpreted as written in accordance with their own terms. Well, you could have written this sentence, all other benefits payable may be assigned at your option, but this does not include the right to sue. Yes. But you didn't. That is correct, Your Honor. Yes. Yes. Yes. The non — the issue of the right to sue, which Mr. Woody will address this in more detail in the proximity rule, is contained within the claims procedure section, where it is explained how a claim is submitted, how the participant submits a claim. But it would have been entirely unambiguous if you had written all other benefits payable by the plan may be assigned at your option, but this assignment does not include the right to sue. Well, we believe that the clause itself — the language of the non-assignability clause itself is unambiguous, and the fact that it's set forth in the claims procedure section does not — does not invalidate that or make it otherwise ambiguous. But your answer to my question is you could have written that sentence to include, but this doesn't include the right to sue. Yes. Yes, Your Honor. But why — why isn't it consistent to say that within the assignment of the benefits is included the right to sue, and that is to a service provider? But then any other assignment of a right to sue is not permitted. So, in other words, when it's tied up with the benefit provider, which has a very specific paragraph addressed to it, they can sue. But if there's anybody else, like I can't assign it to my brother-in-law, I can't assign it to one of these law firms who aggregates claims, or anybody else, why isn't — why The reason is that the plan itself makes clear that the right to bring suit remains at all times with the participant, without regard to whether the participant has exercised his or her options during payment. Well, I'm not sure that's true, because the waiver of the — or the non-suit language says any right to assign his or her right to sue to recover benefits. And if he or she has already assigned that right to a provider, he doesn't have any more right to sue to recover benefits. Well, the intent — we think that the only way to reasonably read that provision is that the right to sue remains at all times with the provider. I have 20 seconds — What happens once all the benefits are assigned? Are you then splitting the right to recover the benefits from the right to sue? As far as the plan participant. No. The plan participant at all times retains the right to sue and the right to recover plan benefits. Even if he or she has completely assigned his or her right to benefits, he still, in your view, has the right to sue to recover that which he or she has already assigned? Yes, with the exception of there's no opportunity there for a double recovery or a double payment of benefits. That's why the right to sue retains with the participant. Is there any latches problem which would prevent the patient in this case from applying directly to the plan for the remaining $600,000, $700,000, whatever it is? Only the limitations periods that are set forth in the plan. What I'm getting at is can the patient in this case today file against the plan to have the plan reimburse the hospital for the remaining 90% of the claim? The patient retains the right to bring suit or to have the hospital bring suit as the patient's authorized representative subject to whatever limitations, provisions are set forth in the plan. So is this a distinction without a difference if the provider can be an authorized representative? Why isn't that actually what's happened here when you assign all the benefits? Because the provider is not suing on behalf of the patient. The provider is suing in its own right, seeking its own recovery. And because it is not an ERISA entity and because it is not one of the entities authorized by the statute to bring suit, it cannot do so. I'm not sure that I heard your answer to Judge O'Scanlan's question. So is it as we sit here today too late for the patient to file suit to recover the benefits that you wouldn't pay the hospital as that time in this case already passed? I have not analyzed a specific question of whether the limitations provision in the policy would prevent the patient from bringing the right to sue. So I can't answer that question specifically. I can only tell the Court that the patient still retains the patient's right as an ERISA plan participant to bring suit subject only to whatever limitations, provisions might be set forth. All right. Just put the time limitations off the table for a moment. Are you telling us that, excluding that point, that the patient today could sue your plan for the remaining $700,000? Putting any limitations period aside, yes, Your Honor. Or the provider could get another piece of paper that say they act on behalf of the claimant and amend their pleadings, basically? Yes. The hospital would have the right, would have the ability, I should say, to act as the authorized representative of the patient. What the hospital cannot do is bring suit in its own name, in its own right. What I don't understand as a practical matter, why this couldn't have been worked out. I mean, all you're talking about is a piece of paper. Why couldn't this have been worked out without having to go to court and come up to here? Well, as I understand the pleadings correctly, I believe that the patient passed away. Well, isn't there a state? Or a representative? That I can't answer. We, as defendants, we are limited to addressing the claim that is being set before us. And is there any limitation provision in the plan itself as opposed to normal contract law under California law? That would preclude an authorized representative of the plan? No. Is there any specific time limitation in the contract itself, in the ERISA contract? I have not analyzed that issue, Your Honor. I cannot specifically speak to that. I appreciate that. Thank you. May it please the Court. Ryan Woody on behalf of Appalee, the FIA group. My focus today is going to be on the second issue presented, which is ERISA's proximity rule. I would, if allowed, just like to address Judge Bennett's last question. And I think that the focus may have shifted off of what this really is and not focused on the plan's definition of assignment of benefits on the plan, page 55, which limits when the plan uses that term. It only means a direction to pay. So when it uses that language on page 21 that you've been referring to, it's specifically constraining what it means by an assignment of benefits to only mean the direction to pay. That brings this back within the DB Health Care brand Tarzana line of cases. So there is a direction to pay, but that doesn't conflict with the otherwise absolute anti-assignment provision. But the Court should affirm the district court's holding on the proximity rule for two main reasons. First, the hospital's claim here never gets off the ground because the proximity rule doesn't apply to anti-assignment provisions. And even if it did, they lack standing to do so because the conditions of admission form that was signed, paragraph 3, specifically indicates that the patient is retaining all of her rights and legal remedies and is not divesting them by that assignment. Now, they've argued that provision means that she's actually assigning those claims, but what she's doing is appointing the hospital as an authorized representative. So paragraph 3 is very important because it limits what that actual assignment language means. Now, the hospital says this is a textbook proximity case, but they don't cite any authority anywhere that where a court has held, one, that an anti-assignment provision must be within the SPD, or two, that the proximity rule applies to the anti-assignment provision. Both the plain text of the rule, if we focus just on the plain text of the rule and some of this court's circuit authority, forecloses the arguments. The rule has its genesis out of 29 U.S.C. 1022, which is the SPD statute. Essentially, that statute says what should be in a summary plan description. The rule itself says that restrictive plan provisions need to be in close conjunction with the description of benefits. So there's two requirements. First, there must be a restrictive plan provision. And second, if there is, it must be in close conjunction with the description of benefits. The hospital's claim fails on both of those requirements. There is no restrictive plan provision here, because ERISA defines a restrictive plan provision as one that can result in disqualification, ineligibility, denial or loss of benefits. But the anti-assignment provision does exactly the opposite. It specifically says that the participant is retaining those ERISA rights, and she cannot alienate those rights. This Court's opinions in Brandt, Tarzana, Eden, Surgical, and Spinodex cited in our brief all hold that anti-assignment provisions are not a substantive basis for a denial of claims. Therefore, they cannot be a restrictive provision that ERISA talks about. Really, the best authority on this, unfortunately, comes from a district court opinion. It's the only court that has squarely tackled this issue. It's the dual diagnosis decision that we cited in the brief. And in that case, the Court thoroughly reviewed this Court's anti-assignment case law from Davidovitz all the way to Spinodex, and held that anti-assignment provisions do not, as a matter of law, result in disqualification, ineligibility, denial or loss of benefits. Therefore, it's not a restrictive plan provision. And the Court there held that the anti-assignment provision does not even have to be in the SPD to be enforceable. Instead, it's a separate issue that can be under a plan document under 1102. And so if the anti-assignment provision is not included within the scope of the SPD rule, the proximity rule has no bearing. Finally, the claim really collapses and detaches itself from the text of the rule when you look at the second element in close conjunction with the description of benefits. Our description of benefits section is in between pages 27 and 40, but the plaintiff doesn't want to — isn't arguing that the provision should be there. It says the plan provision should be on page 21, which talks about PPO payment arrangements. The proximity rule has absolutely nothing to do with the plan's payment arrangements. Instead, the proximity rule is there to ensure that any kind of limitation that may affect the patient's entitlement to benefits be placed in close conjunction. This would be the first court anywhere to hold that the proximity rule expands beyond a provision, puts a provision outside of the description of benefits and into a plan's payment provisions. So I see my time has expired. Thank you. Sotomayor, finish your thought. I'm just saying there is absolutely no authority for that proposition. It's well outside the text of the rule. Thank you. Thank you. The obvious question, Ms. Boyd, is why you can't simply get an assignment from the estate and sue on behalf of the estate of the deceased. So I think the answer to that is that we had an assignment from the patient and the assignment is valid under the terms of the plan. No, I'm not. That's not the question. That's not quite the question. Else we wouldn't be here. The question is whether you could get an assignment from the estate so you could stand in the shoes of the decedent in terms of your suit, as opposed to standing independently as the hospital provider. So I think we certainly could proceed as an authorized representative. That was another part, also, of the conditions of admission assignment of benefits. So that certainly is yet another ground on which the hospital should be able to proceed. So, in other words, there's part of the admission maybe that we don't have that's not only do we assign the benefits, but the hospital can act as your authorized representative? That actually is in the complaint, Your Honor. It appears at ER 131 through 132. And what paragraph is that? So it is paragraph 66, Your Honor. It's a fairly lengthy quote. Could you amend your complaint now? I think we certainly could. If you could, I guess the bottom line is then why are we here if this issue could be resolved? So I think the issue can be resolved, but I think it is best resolved in the way that we've suggested, which is that the assignment of benefits should be upheld. And if I could address one of the points that my friends on the other side raised, which was to contend that this was not, in fact, an actual assignment of benefits, but simply a right to payment that is inconsistent with the language that appears at ER 131. The title of that section is, in fact, assignment of benefits. And it says patient assigns all of his or her rights and benefits. And while it refers separately to a right to payment, it is very specific in describing it as an assignment of benefits. So it's the basic benefit assignment that you're relying on, not some other language? It is that. And so you would rather risk an adverse ruling on principle than a practical substitution of party? No, Your Honor, I would not say that. I would say that our preference in terms of order of argument is obviously the arguments that we've made in our brief about why, as it stands, the plan's assignment of benefits, why that should be upheld here. In the alternative, do we think that we could amend to argue that we are an authorized representative? Yes. And can you remind me of when the complaint was filed? Yes, Your Honor. The complaint was filed on June 9, 2017. And you had also asked a question about the time period. And the time period, it appears on ER 98 in the plan. And it says any legal action has to be brought within three years. So you're within? I believe so. Counsel, the provider of service appeal rights, where you get to be appointed as the authorized representative, and this is at ER 98, talks about only with regard to appeal of a denied claim. Have the defendants ever taken the position that you can't be appointed the authorized representative to file a lawsuit because you can only be the So that is my understanding that is part of their position, is that we can essentially, we can be assigned benefits for the benefits that were paid, but the assignment is not valid, that somehow you have to be able to parse it in advance so that we can't be assigned the benefits that were denied. No, but this section talks about when you can be the authorized representative. And I think that that was some of our questions to your friends on the other side. Have they ever taken the position that you can't actually be the authorized representative for the purpose of filing a separate lawsuit, but only for the purpose of taking the plan administrative appeal? So I don't know that they have parsed that finally. Their position has been that the hospital cannot bring the suit on behalf of the patient. I don't think that they've drawn a distinction between whether that is in the shoes of the patient as the assignee or as the authorized representative. Well, it certainly sounds like today they have conceded that you can bring the lawsuit as the authorized representative, but in the name of the patient. I think that that is correct. I think that they have conceded that. I also think, though, however, when they're talking about the case as brought up on the briefs, that they're sort of confusing the case law. There's clearly case law that says that a plan can permit assignment, that a plan can preclude assignment, but there's no case law saying that you can split the two, that you can assign the benefits but preclude any right of recovery. And the case law in this circuit and others is very, very clear, that if you have assigned the benefits, then the patient cannot bring the suit. And I think that's a fundamental hurdle to their position. I see that I'm out of time, so I will simply ask the Court to reverse and remand. Thank you very much. Thank you. Thank you all for your arguments this morning. Regional Medical Center v. W.H. Administrators is now
judges: O'scannlain, McKeown, Bennet